BARNEY· WHITMORE v. STATE.

No. A-3504.   Opinion Filed June 17, 1920.

(190 Pac. 278.)

(Syllabus.)

**HOMICIDE—Murder—Sufficiency of Evidence.** In a prosecution for murder, the evidence reviewed, and held sufficient to sustain the conviction with imprisonment for life as the punishment, and that no material error was committed upon the trial.

*Appeal from District Court, Jefferson County;*
*Cham Jones, Judge.*

Barney Whitmore was convicted of murder, and he appeals.   Affirmed.

*P. T. Hamilton,* for plaintiff in error.

The Attorney General and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   Plaintiff in error, Barney Whitmore, herein referred to as the defendant, was convicted of murder, and in accordance with the verdict of the jury was sentenced to imprisonment for life at hard labor.   He has appealed from the judgment of conviction to this court, but there has been no appearance in his behalf on his appeal. The information, in substance, charges that in Jefferson county on or about the 24th day of January, 1918, the said Barney Whitmore did kill and murder one John Goldsmith, by striking and crushing his head with a blunt, dangerous and deadly weapon.

The record discloses, in substance, these facts:

The deceased, a man about 45 years of age, with his wife, and child lived at Healdton, and was engaged in hauling junk; the defendant, a man about 24 years of age, had lived in that neighborhood for about 10 years. About a week before his death deceased hired the defendant to work for him. On the date alleged they left the place in a two-horse farm wagon with sheet and bows, and in it was a mattress and quilts. The next morning the defendant was back at the place and told Mrs. Goldsmith her husband had gone to Ft. Worth; that on their way to Waurika they met a man driving a Ford car just west of Cornish. The man said "Hello, John," and deceased stopped, left the wagon, and they talked a few minutes. Deceased called the man "Loney," and came back to the wagon and told the defendant to take the wagon and team back home and go on with the work, and to tell his wife that he was going to Ft Worth and would be back in a week or two. A day or two later the defendant moved his wife and two children to deceased's place and continued to work there for about three weeks. About a month later the body of deceased was found in an old well in Talley Wilson's pasture, four miles southwest of the old town of Cornish and about two miles south of Miller's store on Mud Creek. The well was between 20 and 30 feet deep, the body was covered with rubbish and a large rock, a binder wheel, and some pieces of boards and of old stove pipe: It apparently had been pitched in head foremost and the feet remained uncovered. When taken out it had only an undershirt, drawers, and socks. Later a sack containing a part of the clothes worn by deceased and his overcoat was found in a concrete culvert on the road about two miles from Ringling. The medical witnesses who made the post mortem examination testified that the forehead had been crushed in with a

blunt instrument, and the skull back of the left ear was crushed in, and also the jawbone had been broken in two or three places.

The evidence shows that defendant and deceased stopped at a wagon yard in Ringling that day and bought some feed for the team; that they left the wagon yard together about 4 o'clock and that night stopped at Miller's store on Mud Creek and ate supper, fed the team and remained there about an hour, leaving there between 8 and 9 o'clock. Several witnesses testified that deceased was very drunk while at Miller's store. A witness testified that deceased paid for the dinners in Ringling that day with a $5 bill, and that he had a roll of greenbacks that looked like $50 or more in his hand at the time.

When arrested the defendant stated to the sheriff, in the presence of several persons, that the last time he saw Goldsmith he got out of his wagon and got into a car and went off with somebody; that he went to Ringling that day with Goldsmith and they were going to Waurika to buy a bunch of mules and got as far as Mud Creek, near Cornish, and there met a Ford car, and Goldsmith got out of the wagon and went to the car and talked a little bit and came back to the wagon and told him to go ahead with the work; that he was going to Ft. Worth; that Goldsmith called the man "Loney," or some such name as that. A witness testified that in Ringling that day the defendant told him there was a man in the wagon yard by the name of Goldsmith, who had just got out of the penitentiary, and they had been stealing chickens together and they intended to get some hogs over on Mud Creek; that the defendant said Goldsmith had some money, a good team and harness, and a good wagon, and he had an axe and hammer and was going to kill Goldsmith and throw him in the

creek; that he was going to kill him if he had to take him to Red River and tie a rock around his neck.

There was testimony tending to show that the defendant had in his possession the coat and pants which were worn by the deceased on the day he left home. The only testimony offered on the part of the defendant explaining or denying the inculpating circumstances was to show that the coat and pants in question belonged to the defendant, and evidence tending to impeach the witness who testified that the defendant told him that he was going to kill Goldsmith. The defendant did not testify.

The errors assigned are that the verdict is not sustained by sufficient evidence; that the court erred in admitting irrelevant, incompetent, and immaterial testimony and in refusing to admit competent and material testimony offered by the defendant. We have carefully examined the record independent of the errors assigned, and have given the case that careful consideration which its importance demands, and we have been unable to find a single ruling of the court on the admission or in the rejection of evidence upon which error could be predicated, and our conclusion is that the undisputed facts and circumstances justified the verdict of the jury. A more cold-blooded, brutal, and inhuman murder could hardly be imagined; it was heartless in conception and cruel in execution.

There is no error presented in the record; accordingly the judgment is affirmed.

ARMSTRONG and MATSON, JJ. concur.